UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION


JEFFERY A. STEWART,                    CIVIL ACTION
         Petitioner                    SECTION "P"
                                       NO. CV04-1612-A
VERSUS

BURL CAIN, WARDEN,                     JUDGE DEE D. DRELL
         Respondent                    MAGISTRATE JUDGE JAMES D. KIRK


<u>REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE</u>

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by pro se petitioner Jeffery A. Stewart ("Stewart") on August 2, 2004. Stewart is contesting his 1999 conviction, in the Ninth Judicial District Court, Rapides Parish, Louisiana, on one count of second degree murder; Stewart was sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence. Stewart is presently confined in the Louisiana State Penitentiary in Angola, Louisiana.

Stewart raises the following grounds for relief in his habeas petition:

   1. Stewart was denied his right to a jury trial; Stewart waived this right before a determination of mental competence had been made.

   2. Stewart was denied due process because he was tried before a determination was made as to his mental competence.

   3. Stewart was denied equal protection of the law because

the process for selecting a grand jury foreperson was racially discriminatory.

4. Stewart was denied effective assistance of counsel by his attorney's failure to file a motion to quash the indictment for discrimination in the selection of the grand jury foreperson, failure to file a motion to quash the indictment due to use of a discriminatory method to select the grand jury foreperson, and failure to interview witnesses, investigate the case and witnesses, keep Stewart informed of the proceedings, and make objections.

<u>Facts</u>

The facts of this case as set forth by the Louisiana Third Circuit Court of Appeals at <u>State v. Stewart</u>, 2000-0143 (La. App. 3rd Cir. 10/4/00), 771 So.2d 723, 724, writ den., 2000-3135 (La. 11/2/01), 800 So.2d 866, are as follows:

"On the evening of October 16, 1998, while Connie Stewart was at work, her husband Jeffrey Allen Stewart invited his mother and sister Diana Stewart to his home. There had been some strife between Connie and his mother and the defendant called them there for a "family meeting" in hopes of settling the dispute, according to his testimony. He did not tell Connie beforehand about the meeting.

"When Connie arrived home from work, she found her husband, sister-in-law, and mother-in-law at her home. She went straight to her bedroom and changed clothes. When she did not quickly emerge, the defendant went into the bedroom and asked her to come out and talk to his mother and sister. Connie did so and had a conversation with the two that lasted about an hour. While they talked, the defendant did some paperwork.

"Following the meeting, the defendant drove his mother and sister home.

"Approximately one-half hour later, the defendant called his mother's house and told Diana he had shot Connie. Diana and Mark Cencinat, defendant's brother-in-law, arrived at the defendant's home within minutes and found the door locked. They knocked on the door and the defendant admitted them into the house after Diana told him she needed to come in and tend to Connie.

2

"A call was placed to 911 and Diana attempted to revive Connie with no success. Connie died at the scene, having received four gunshot wounds to her head."

## Rule 8(a) Resolution

This court is able to resolve the merits of this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims, and the State court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition. Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

## Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law as determined by

the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d)(1), and questions of fact are reviewed under Section 2254(d)(2). <u>Martin v. Cain</u>, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. <u>Martin</u>, 246 F.3d at 476, and cases cited therein.

A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable. A federal court cannot grant habeas relief simply by concluding that the state court decision applied clearly established federal law erroneously; the court must conclude that such application was also unreasonable. <u>Martin</u>, 246 F.3d at 476, and cases cited therein.

<u>Law and Analysis</u>

4

<u>No. 1 - Waiver of Right to a Jury Trial</u>

First, Stewart contends he was denied his right to a jury trial. Stewart contends he waived his right to a jury before a determination of mental competence had been made.

Stewart filed a motion for a sanity commission on June 30, 1999 (Tr. p. 55), which was opposed by the State on July 2, 1999 (Tr. p. 58). On July 12, 1999, the court set the motion for hearing on August 9, 1999 (Tr. p. 1, court minutes). The hearing on Stewart's motion for a mental competency exam was held on August 9, 1999, and Stewart's motion was denied (Tr. p. 2, court minutes); apparently, the court did not think there was a reasonable ground to doubt Stewart's mental capacity to proceed. See La.C.Cr.P. art. 643. According to the minutes of court, the case proceeded *after* Stewart's motion for a mental exam was ruled on. No further steps were taken in Stewart's prosecution while his motion for a mental exam was pending.

On September 13, 1999, Stewart was present in court with his attorney and the prosecutor for argument on the motion in limine filed by the state, which was denied. According to the state court record, Stewart then waived his right to a jury trial and moved for a bench trial, which was granted (Tr. p. 2; Tr. pp. 301-302). A bench trial began the next day (Tr. p. 2; p. 79).

The record shows Stewart not only waived his right to a jury, but did so after his motion for a mental competency exam was ruled

on.  Therefore, Stewart was not denied his right to a jury.  This ground for relief is meritless.

<u>No. 2 – Mental Competence</u>

Next, Stewart contends he was denied due process because he was tried before a determination was made as to his mental competence.  As stated above, the court denied Stewart's motion for a mental competency exam was on August 9, 1999, and trial began on September 14, 1999 (Tr. pp. 1-2).  Since Stewart was not tried before his motion was heard, he was not denied due process.  This ground for relief is also meritless.

<u>No. 3 – Grand Jury Foreperson</u>

Stewart alleges he was denied equal protection of the law because the process for selecting a grand jury foreperson was racially discriminatory and there was racial discrimination in the selection of his grand jury foreperson.

## 1. Procedural Bar

The Respondent claims this court is procedurally barred from the considering the merits of Stewart's grand jury foreperson discrimination claim because Stewart failed to file a pretrial motion to quash the indictment.

Stewart was indicted in November 1998 (Tr. pp. 7, 16).  As Stewart admits in his brief, his attorney did not file a pretrial motion to quash the indictment.  Under Louisiana law, a challenge to the eligibility of the grand jury venire must be made by a

pretrial motion to quash. Under La.C.Cr.P. art. 535(D), the grounds for a motion to quash are waived unless a motion to quash is filed. <u>Williams v. Cain</u>, 125 F.3d 269, 274 (5th Cir. 1997), cert. den., 525 U.S. 859, 119 S.Ct. 144 (1998).

Federal habeas review is barred in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice. To prevent federal habeas review, a state procedural bar must be independent of the merits of the federal claim and adequate in the sense of not being unconstitutional, or arbitrary, or pretextual. Where the last reasoned state court opinion on a federal claim explicitly imposes a procedural default, there is a presumption that a later decision rejecting the same claim without opinion did not disregard the procedural bar and consider the merits. <u>Lott v. Hargett</u>, 80 F.3d 161, 164 (5th Cir. 1996).

Federal habeas review of a claim is procedurally barred if the last state court to consider the claim "clearly and expressly" based its denial of relief on an "independent and adequate" state procedural rule. <u>Williams v. Cain</u>, 31 Fed.Appx. 835, 2002 WL 243241 (5th Cir. 2002) ("None of the state court judgments

7

addressing the four § 2254 claims expressly indicated that the denial of relief was based on an independent and adequate state law. The application of the procedural default doctrine to these claims was error."), citing <u>Glover v. Cain</u>, 128 F.3d 900, 902 (5th Cir. 1997), cert. den., 523 U.S. 1125, 118 S.Ct. 1811 (1998).

If the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition. <u>Coleman</u>, 501 U.S. at 735 n. 1, 111 S.Ct. at 2557 n.1, citing <u>Harris v. Reed</u>, 489 U.S. 255, 269-270, 109 S.Ct. 1038, 1046-1047 (1989); <u>Teague v. Lane</u>, 489 U.S. 288, 297-298, 109 S.Ct. 1060, 1067-1068 (1989).

Stewart raised the racial discrimination issue before the Louisiana state courts in his applications for post-conviction relief (Tr. pp. 190-226, 743-801). No court gave any reasons for denying Stewart's post-conviction relief application on the issue of discrimination in the selection of the grand jury foreperson (Tr. pp. 214, 800, 802, 898). Since the state courts did not *clearly and expressly* rely on a state procedural bar (the failure to file a motion to quash) to deny Stewart's claim, this court is not procedurally barred from considering the claim now.

Therefore, the court must now turn to consideration of the

merits of Stewart's grand jury foreperson discrimination claim.

## 2. Burdens of Proof

It is unconstitutional to discriminate against black persons in the selection of the grand jury and grand jury forepersons. Rose v. Mitchell, 443 U.S. 545, 565, 99 S.Ct. 2993, 3005 (1979). Also, Campbell v. Louisiana, 523 U.S. 392, 118 S.Ct. 1419 (1998)[1]; Alexander v. Louisiana, 405 U.S. 625, 632, 92 S.Ct. 1221, 1224 (1972). To be entitled to habeas relief, the petitioner must prove an equal protection violation has occurred in the context of grand jury foreperson selection by showing that the procedure employed resulted in substantial under-representation of a particular race or identifiable group. Specifically, a petitioner must prove a prima facie case with regard to the foreperson as follows: (1) establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied; (2) prove the degree of under-representation by comparing the proportion of the group in the total population called to serve as foreperson over a significant period of time

---

[1] In Campbell v. Louisiana, 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998), the Supreme Court held that a white criminal defendant has standing to raise equal protection and due process objections to discrimination against black persons in the selection of grand jurors and grand jury forepersons. See also, Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364 (1991) (white defendant has standing to object to exclusion of black prospective jurors); Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163 (1972) (court permitted a white defendant to challenge the systematic exclusion of black persons from the grand and petit juries).

(this method of proof is called the "rule of exclusion"); and (3) show that the selection procedure is susceptible to abuse or is not racially neutral, to support the presumption of discrimination raised by the statistical showing.[2]  Only if a petitioner establishes a prima facie case of discrimination in the selection of the foreperson in accord with this approach does the burden shift to the State to rebut that prima facie case.  Rose, 443 U.S. at 565, 99 S.Ct. at 3005.

It is presumed the petitioner has been prejudiced where racial discrimination in the selection of the grand jury foreperson is proven.  Rose, 443 U.S. at 565, 99 S.Ct. at 3005; Rideau, 237 F.3d at 485; Johnson v. Puckett, 929 F.2d 1067 (5th Cir.), cert. den., 502 U.S. 898, 112 S.Ct. 274 (1991); Guice v. Fortenberry, 661 F.2d 496 (5th Cir. 1981) (Guice II).

Once the petitioner makes a prima facie showing of substantial under-representation of a particular race or group, the State may rebut a presumption of discrimination by showing the pattern of

_____

[2] In the alternative, the petitioner may prove a prima facie case without showing a statistical disparity over a significant period of time.  Instead, he may satisfy his prima facie burden by showing a disparity in the particular grand jury body that indicted him, coupled with proof either that (1) the selection process was itself not racially neutral and presented an opportunity for discrimination, or that (2) the jury commissioners had made no attempt to acquaint themselves with eligible members of the black community.  Rideau v. Whitley, 237 F.3d 472, 485 (5th Cir. 2000), cert. den., 121 S.Ct. 2539 (U.S. 2001).  In the case at bar, Stewart attempts to carry his burden of proof using the statistical analysis method.

under-representation proven at Step 2 was the result of a "racially neutral selection procedure." Guice, 722 F.2d at 280, quoting Alexander v. Louisiana, 405 U.S. 625, 632, 92 S.Ct. 1221, 1226 (1972).[3]

The Fifth Circuit has already held, in Guice v.Fortenberry, 633 F.2d 699,703 (5th Cir. 1980), on rehearing, 661 F.2d 496 (5th Cir. 1981)(Guice I and Guice II), that Louisiana's previously used grand jury foreperson selection process, La.C.Cr.P. art. 413, whereby eleven grand jurors were selected by lot but the foreperson (who was the twelfth grand juror) was selected by the judge from the venire, was susceptible of abuse and was not racially neutral.[4]

_____

[3] For cases in Louisiana involving a grand jury selected under the amended La.C.Cr.P. art. 413(B) (La. Acts 1999, No. 984, § 1), testimony presented by the State, in rebuttal, that merely affirms good faith in making individual juror selections is insufficient to dispel a prima facie case of systematic exclusion. Guice, 722 F.2d at 280, citing Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532 (1970). Also, Castaneda, 430 U.S. at 499, 97 S.Ct. at 1282; Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667 (1954); Norris v. Alabama, 294 U.S. 587, 598, 55 S.Ct. 579, 584 (1935). Testimony as to objective criteria or guidelines under which the judges selected grand jury forepersons can rebut a prima facie case of discrimination. Guice, 722 F.2d at 281, U.S. v. Perez-Hernandez, 672 F.2d 1380 (11th Cir. 1982).

[4] The Guice court further held that, since the grand jury foreperson's role is not merely ministerial because the foreperson is a voting member of the grand jury, the composition of the grand jury itself was affected. See La.C.Cr.P. art. 413. A claim of discrimination in the selection of the grand jury foreperson must be treated as a claim in the selection of the grand jury itself. Campbell v. Louisiana, 523 U.S. at 396-97 & 340-43, 118 S.Ct. at 1422, 1424-25 (1998); Guice, 633 F.2d at 704. Also, Guice, 722 F.2d 276, 278-281 (5th Cir.1984) (Guice III).

That procedure was used for Stewart's 1998 grand jury.

Therefore, the court must determine first whether Stewart has carried his initial burden of proving a prima facie case of substantial under-representation of black persons as grand jury forepersons pursuant to the "rule of exclusion" discussed in Castaneda.

### 3. Rule of Exclusion Analysis

The rule of exclusion method is used to prove racial discrimination in the selection of the grand jury foreperson.  See Vasquez v. Hillery, 474 U.S. 254, 259, 106 S.Ct. 617, 621 (1986); Rideau, 237 F.3d at 486; Jefferson, 962 F.2d at 1189, citing Moultrie v. Martin, 690 F.2d 1078, 1082 (4th Cir. 1982).

The "rule of exclusion" set forth in Castaneda uses statistics in the standard deviation analysis and the racial disparity test. Thus, the standard deviation, a final expression of binomial analysis (or an analysis involving two values), is nothing more than a measure of the difference between the predicted number (here, of black grand jury forepersons) and the actual number (of black grand jury forepersons).  The rationale behind the "rule of exclusion" is that if a disparity is sufficiently large over a significant period of time, then it is unlikely that the disparity is due solely to chance or to accident, and in the absence of evidence to the contrary, a court should conclude that racial or other class-related factors entered into the selection process. Jefferson v. Morgan, 962 F.2d 1185, 1189 (6th Cir. 1992), cert.

den., 506 U.S. 905, 113 S.Ct. 297 (1992), citing Castaneda, 430 U.S. at 494-95, 97 S.Ct. at 1280.

In any given drawing some fluctuation from the expected number is predicted. The important point, however, is that the statistical model shows that the results of a random drawing are likely to fall in the vicinity of the expected value. The measure of the predicted fluctuations from the expected value is the standard deviation, defined for the binomial distribution as the square root of the product of the total number in the sample times the probability of selecting a person from the distinct group (here, black persons) times the probability of selecting a person not in the distinct group (here, non-black persons). As a general rule for large samples, if the difference between the expected value and the observed number is greater than two or three standard deviations, then the hypothesis that the jury drawing was random would be suspect to a social scientist. Castaneda, 430 U.S. at 496, 97 S.Ct. at 1281.

Therefore, the degree of under-representation is proven by comparing the proportion of the group (black voters) in the voter registration statistics to the proportion called to serve as grand jury forepersons, over a significant period of time.[5] See Rideau,

[5] Fifth Circuit authority clearly requires greater absolute disparities when general population statistics are utilized rather than statistics concerning those in the general population actually qualified or eligible to serve as jurors. U.S. v. Daly, 573 F.Supp. 788, 792 (N.D.Tex. 1983), citing Foster v. Sparks, 506 F.2d 805, 833 (5th Cir. 1975). In Alexander v. Louisiana, 405 U.S. at 630, 92 S.Ct. at 1225, the Supreme Court found that the petitioner had established a prima facie case of

237 F.3d at 486. Also, <u>Castaneda</u>, 430 U.S. at 493, 97 S.Ct. at 1279, citing <u>Hernandez v. Texas</u>, 347 U.S. 475, 74 S.Ct. 667 (1954).

The Fifth Circuit discussed eligible population statistics in <u>U. S. ex rel. Barksdale v. Blackburn</u>, 639 F.2d 1115, 1123 (5th Cir.), 454 U.S. 1056, 102 S.Ct. 603 (1981), as follows:

"Although Castaneda v. Partida, used general population statistics to measure racial disparities, that case should not be read to require using those figures. When Castaneda reached the Supreme Court, it had been tried and appealed to this circuit on the basis of general statistics. It was not until oral argument before the Supreme Court that the State of Texas contended that more narrow eligible population statistics would explain the disparity found by the Court. Castaneda v. Partida, supra, 430 U.S. at 488 n.8, 97 S.Ct. at 1276 n.8. The Court proceeded on the basis of general population statistics because there were "so many implicit assumptions" in the use of the untested eligible population statistics which an appellate court could not make 'without a record below in which those assumptions were tested.' Id. In other cases, where the appropriate statistics had been developed in the record, the Court relied on statistics describing the population of blacks presumptively eligible for jury service. See, e. g., Alexander v. Louisiana, supra; Swain v. Alabama, supra; Jones v. Georgia, supra; Whitus v. Georgia, supra. Chief Justice Burger, dissenting in Castaneda v. Partida, supra, 430 U.S. at 504, 97 S.Ct. at 1285, wrote that '(t)he decisions of this Court suggest, and common sense demands, that eligible population statistics, not gross population figures, provide the relevant starting point.' (emphasis in original)."

See also, <u>Rideaux</u>, 237 F.3d at 486-488 (voter registration

_____

discrimination because the juror "selection procedures themselves were not racially neutral" and there was a 14% disparity between the presumptively eligible black population and the actual list of prospective jurors. The Court did not rely "on statistical improbability alone, for the selection procedures themselves were not racially neutral." The 14% disparity was sufficient to create a prima facie case only with other evidence of discrimination.

statistics as well as census statistics as to males over the age of 21 were used for statistical analysis of discrimination in selection of grand jury forepersons). Therefore, in the case at bar, the voter registration statistics for Rapides Parish will be used.

Stewart, who was indicted in November 1998, has shown that the percentage of black registered voters in Rapides Parish as of July 2, 1998 was 25.87 percent:

| Year | Black Registered Voters | Total Registered Voters | Percentage of Black Registered Voters |
|------|------|------|------|
| 1998 | 19,643 | 75,940 | 25.87% |

Stewart submitted the Rapides Parish grand jury statistics from 1981 through July 1995. In compliance with an order from this court, the Respondent provided the remaining grand jury statistics through November 1998. This court will use the 15 year time frame immediately preceding and including the grand jury that indicted Stewart in November 1998, in accordance with the Fifth Circuit's unpublished opinion in Ray v. Cain, 71 Fed.Appx. 442 (5th Cir. 2003)(unpublished opinion), located in Ray v. Cain, Docket No. 99-CV-198 (W.D.La. 2003).

In the 29 grand juries convened in Rapides Parish from January 1984 through November 1998, five grand jury forepersons were black, for a percentage of 17.24 percent.

By subtracting 17.24 from 25.87, the statistics indicate a

15

*disparity* of about 8.63% between the percentage of black registered voters and the percentage of black grand jury forepersons from 1981 through 1995.

The court must next determine the standard deviation to determine the significance of the racial disparity in Rapides Parish grand jury forepersons.

### 4. Standard Deviation Analysis

In Castaneda, 430 U.S. at 495-96 n.17, 97 S.Ct. at 1280-81 n.17, the Supreme Court used a standard deviation analysis as a means of predicting the significance of racial disparities. Standard deviation is a measure of the extent to which an observed result is likely to vary from an expected result. The larger the number of standard deviations an observed result is from an expected result, the lower the probability that the observed result is random. More specifically, in the context of racial discrimination claims, the larger the number of standard deviations, the more likely the observed result is the product of discrimination rather than chance. Jefferson, 962 F.2d at 1189.

First, the court must determine how many black grand jury forepersons one would have expected Rapides Parish to select out of the 29 grand jury foreperson positions available. The formula for determining an *expected result* is "n x p", where "n" is the sample size (here the total number of grand jury forepersons selected by the parish, which is 29) and "p" is the proportion of items

16

possessing the characteristic that is being investigated (here, the proportion of black registered voters in Rapides Parish, which, according to the 1998 statistics, was 25.87%). See <u>Jefferson</u>, 962 F.2d at 1189. Applying the formula to the statistics: n x p = expected result, or 29 x .2587 = 7.5023, one would have expected the Rapides Parish to have had approximately 7 black grand jury forepersons. In this case, the parish actually selected only five black grand jury forepersons.

Next, the formula for determining *standard deviation* (the measure of the extent to which an observed result is likely to vary from the expected result) is the square root of the product of the total number in the sample times the probability of selecting a black person (correlating to their percentage in the population) times the probability of selecting a non-black, or: $\sqrt{}$ n x p x (1-p). <u>Jefferson</u>, 962 F.2d at 1190, citing W. Mendenhall, <u>Introduction to Probability and Statistics</u> 180 (6th ed. 1983); <u>Hillery v. Pulley</u>, 563 F.Supp. 1228, 1244 (E.D.Cal. 1983), aff'd, 733 F.2d 644 (9th Cir. 1984), aff'd, 474 U.S. 254, 106 S.Ct. 617 (1986). Using this formula, 7 X .2587 x (1-.2587) = 1.34, the square root of which is 1.15, the standard deviation of the sample is 1.15, meaning that if Rapides Parish had randomly selected the 29 grand jury forepersons, it would have selected approximately 7

± 1, or 6 to 8, black grand jury forepersons.[6]

Finally, it must be determined how much the expected result of black grand jury forepersons and the observed result of black grand jury forepersons, differ in terms of standard deviations. This difference is called the "*z-score" or "standard score,"* and its formula is: (observed result - expected result)/(standard deviation). <u>Jefferson</u>, 962 F.2d at 1190, citing W. Mendenhall, <u>Introduction to Probability and Statistics</u> at 211. In this case, the equation is (5-7)/1, which equals a -2 standard score.

5. What the Statistics Indicate for a Small Sample

The Supreme Court stated in <u>Castaneda</u> that, as a general rule for large samples, if the difference between the expected value and the observed number is greater than 2 or 3 standard deviations, then the hypothesis that the drawing was random would be suspect to a social scientist.[7] However, since the case at bar involves a

---

[6] Of course, in the <u>Jefferson</u> case, the court was concerned with the racial composition of the grand jury, which is randomly selected. In this case, the court is concerned with race of grand jury forepersons, who were not randomly selected until La.C.Cr.P. art. 413(B) was amended in 1999, by La. Acts 1999, No. 984, § 1, but were selected by the trial judge, purportedly based on their personal qualifications to act as foreperson.

[7] In <u>Jefferson</u>, the Sixth Circuit held that 6 standard deviations was sufficient to establish a prima facie case of racial discrimination in the drawing of grand jurors, selection, where the racial composition of the county was 18.5 percent black persons and only 20 black persons had been drawn for 338 grand jury positions. In <u>Castaneda</u>, the court held that more than 12 standard deviations was sufficient to indicate racial discrimination in the selection of grand jurors where the racial composition of the county was 79.1 % Mexican-Americans, yet of

small sample, one more step must be taken in the statistical analysis to adjust for the small sample size.

Population samples of less than 30 to 40 are generally considered to be small samples and require special treatment in certain statistical analyses. The sample size affects the precision of the statistic. Statisticians usually state whether the difference between actual and expected values is statistically significant at a given confidence level; statisticians usually use 95% or 99% confidence levels. Moultrie, 690 F.2d at 1083, citing P. Hoel & R. Jessen, Basic Statistics for Business and Economics,190 (1977); R. Winkler & W. Hays, Statistics: Probability, Inference, and Decision, 402-403 (2d ed. 1975). In this case, the sample size is only 29 grand jury forepersons.

The Supreme Court's rule in Castaneda can be adjusted for small sample size through the use of the "student's $t$ distribution." The student's $t$ distribution teaches that when the sample size is less than approximately thirty, the number of standard deviations must be increased in order to achieve the same significance level. The student's $t$ distribution, like the binomial distribution used in Castaneda, is represented by a bell shaped curve. When the sample size is small, the student's $t$ curve is flatter in the middle and plumper in the tails. As the sample size increases, the student's $t$ curve is approximated by the

the 220 persons called to serve as grand jurors, only 100 were Mexican-Americans.

binomial distribution. Although there is a mathematical formula to compute the student's *t* distribution, in practice it is more easily computed by the use of tables found in standard books concerning statistics. Moultrie, 690 F.2d at 1084 n.10, citing Winkler & Hays, Statistics: Probability, Inference, and Decision, 355-366 (2d ed. 1975); F. Mosteller, R. Rourke & G. Thomas, Probability with Statistical Applications, (2d ed. 1970).

Student's *t* tables are stated in terms of significance levels and degrees of freedom. The number of degrees of freedom is equal to the sample size minus one. The tables thus show that when the sample size is 29 (i.e. 28 degrees of freedom), one needs to use 2.048 standard deviations for a 95% significance level. Moultrie, 690 F.2d at 1084 n.10; Winkler & Hays, Statistics: Probability, Inference, and Decision, xv (2d ed. 1975).

Therefore, a result of more than 2.048 standard deviations from the expected result of 7 black grand jury forepersons is sufficient for a social scientist to suspect racial discrimination in the selection of the grand jury foreperson. In this case, the deviation from the expected result of 7 black grand jury forepersons was only 2, where five black grand jury forepersons were actually appointed. Since the actual result of 5 black grand jury forepersons is within the standard deviation allowance, it does not create a suspicion of racial discrimination.

Therefore, the results of the statistical analyses show that, although the method for selecting grand jury forepersons used in

20

Louisiana courts in 1998 was susceptible to abuse and was not racially neutral, Stewart has not demonstrated a prima facie case of racial discrimination in the selection of grand jury forepersons in Rapides Parish.

Since Stewart failed to make a prima facie showing that there was racial discrimination against black persons in the selection of grand jury forepersons in Rapides Parish, this ground for habeas relief is meritless.

Ground No. 4 – Ineffective Assistance of Counsel

Stewart also alleges he was denied effective assistance of counsel by his attorney's failure to file a motion to quash the indictment for discrimination in the selection of the grand jury foreperson, failure to file a motion to quash the indictment due to use of a discriminatory method to select the grand jury foreperson, and failure to interview witnesses, investigate the case and witnesses, keep Stewart informed of the proceedings, and make objections.

Stewart contends his counsel was ineffective in failing to file a motion quash the indictment due to racial discrimination in the selection of the grand jury foreperson. Actual prejudice is required where the defendant has failed to preserve his claim that his grand jury was selected through a racially discriminatory process. Pickney, 337 F.3d at 545. Assuming that a successful motion to quash the indictment against Stewart could have been

21

filed, Stewart has failed to show prejudice from his counsel's failure to do so. Given the nature of the State's evidence in this case, including his admissions to his mother and sister, if counsel had filed a motion to quash the indictment, the State would have likely presented the case to a second grand jury and obtained a second indictment. Under these circumstances, the record supports the view that counsel's actions were the result of a sound strategic decision not to engage in futile motions. Compare, Pickney, 337 F.3d at 545; Brown v. Cain, 337 F.3d 546 (5th Cir. 2003). Stewart has not shown that his attorney's failure to file a motion to quash infected his entire trial with error of constitutional dimensions. Compare, Felton v. Barnett, 912 F.2d 92, 97 (4th Cir. 1990), cert. den., 498 U.S. 1032, 111 S.Ct. 693 (1991).

Stewart further contends his counsel was ineffective for failing to interview potential witnesses and failing to investigate the case and potential witnesses.

To establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must show that his counsel's performance was both deficient (i.e., that counsel did not provide reasonably effective assistance under prevailing professional norms) and

prejudicial (i.e., that errors by counsel "actually had an adverse effect on the defense). The former component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. On the latter component, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding; rather, he must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Anderson v. Collins, 18 F.3d 1208, 1215 (5th Cir. 1994), and cases cited therein.

Complaints of uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative. Graves v. Cockrell, 351 F.3d 143, 155 (5th Cir. 2003), amended in other part, 351 F.3d 156 (5th Cir. 2003), cert. den., 124 S.Ct. 2160 (U.S. 2004), citing Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978). Also, Boyd v. Estelle, 661 F.2d 388, 390 (5th Cir. 1981). Where the only evidence of a missing witnesses' testimony is from the defendant, the Court views claims of ineffective assistance with great caution. Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001), citing Lockhart v. McCotter, 782 F.2d 1275, 1282 (5th Cir.1986), cert. den., 479 U.S.

1030, 107 S.Ct. 873 (1987). Unless a petitioner provides the court with affidavits (or similar matter) from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice. Sayre, 238 F.3d at 636.

In the case at bar, Stewart has not alleged what potential witnesses his attorney failed to interview, what they would have said, and how they would have helped his case at trial. Likewise, Stewart has not alleged specifically what his attorney failed to investigate and how he was prejudiced thereby. Therefore, Stewart has not carried his burden of proving he had ineffective assistance of counsel at trial.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Stewart's habeas petition be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered

by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 14th day of July, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE